UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 09-CV-2626 (JFB)(ETB)

———————————

FRAGRANCENET.COM, INC.

Plaintiff,

VERSUS

LES PARFUMS, INC., ET AL.

Defendants.

———————————

**MEMORANDUM AND ORDER**
December 8, 2009

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff FragranceNet.com, Inc. (hereinafter, "plaintiff" or "FragranceNet") brings this action against defendants Les Parfums, Inc., Les Perfumes, Inc., UltraFragrances, Inc., Ultra Fragrances, Inc., and UltraFragrances.com (collectively, "defendants"), alleging that defendants' use of plaintiff's trademarks constitutes trademark infringement, trademark dilution, passing off, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1114, 1125(a) & 1125(c). Plaintiff also brings pendent state claims, including: common law trademark infringement, state law dilution, injury to business reputation, unfair competition, unfair and deceptive practices, misappropriation, and unjust enrichment.

Presently before the Court is defendants' motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendants contend that plaintiff's registered trademarks – namely, "FRAGRANCENET" and "FRAGRANCENET.COM" – are not protectable as a matter of law under the trademark laws because the marks are generic. For the reasons set forth below, the Court denies defendants' motion to dismiss. Although the Second Circuit has in rare circumstances (in the context of publication titles) held that the question of whether a trademark is generic could be decided at the motion to dismiss stage, this case is not one of those extraordinary circumstances. The determination of whether "FRAGRANCENET" and "FRAGRANCENET.COM" are generic

marks will require a fact-specific inquiry that is inappropriate at the motion to dismiss stage. Plaintiff alleges that its trademarks are registered and, thus, there is a presumption that the mark is not generic. There is absolutely nothing in the pleadings to conclude, as a matter of law, that defendants have overcome this presumption. In short, plaintiff has asserted plausible claims under the trademark laws that survive a motion to dismiss. Moreover, the Court declines to convert the motion to dismiss into a motion for summary judgment because defendants have submitted no evidence outside the pleadings for the Court to consider and, in any event, plaintiff is entitled to conduct discovery before making its presentation of evidence in response to any potential summary judgment motion. Accordingly, the motion is denied in its entirety.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint ("Compl."), which the Court assumes to be true for the purposes of deciding this motion. The Court construes the facts in the light most favorable to plaintiff, the non-moving party. *See, e.g.*, *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 492 (2d Cir. 2009).

Plaintiff FragranceNet is a Delaware corporation with its principal place of business in Hauppauge, NY. (Compl. ¶ 7.) Since January 1997, plaintiff has owned and operated an online retail store that sells perfume and related products at www.fragrancenet.com. (Compl. ¶¶ 2, 13.) Plaintiff's trademarks, FRAGRANCENET and FRAGRANCENET.COM, are registered, and plaintiff has used those marks in connection with its sale and marketing of perfume and related products online since January 27, 1997. (Compl. ¶¶ 14, 15.) Plaintiff has sold millions of dollars of merchandise through its website, which accepts orders directly from customers. (Compl. ¶ 16.) Over the past twelve years of operation, plaintiff has established a reputation for high-quality retail sales and customer services under its marks. (Compl. ¶ 17.) There is customer recognition of these marks, and the marks have acquired a substantial level of goodwill. (*Id.*)

The instant action arises out of defendants' bidding on, purchasing, and using certain keywords, including plaintiff's trademarks, in Google's AdWords program, with the knowledge that doing so would result in defendants' links appearing as "Sponsored Links" when a consumer types "fragrancenet," "fragrancenet.com" or other variations of FragranceNet's mark into an Internet keyword search on Google. (Compl. ¶ 3.) The AdWords Program by Google allows advertisers to bid on particular keywords that apply to their websites. (Compl. ¶ 19.) Advertisers may specify whether keywords should be applied as a "broad match," "phrase match," "exact match," or "negative match." When an advertiser bids on a "broad match," its link will appear when a search is conducted for that keyword, its plural forms, its synonyms, or phrases similar to the word. (Compl. ¶ 20.) When an advertiser bids on a "phrase match," its link will appear when a user searches for a particular phrase, even if that phrase is used in combination with other words. (Compl. ¶ 21.) An "exact match" will display the advertiser's link only when the exact phrase bid on is searched on Google. (Compl. ¶ 22.) A "negative match" bid allows an advertiser to ensure that its link does not appear when

2

certain terms are searched. (Compl. ¶ 23.) Sponsored Links appear on the top and right side of the search results screen. (Compl. ¶¶ 18, 25.)

According to plaintiff, defendants bid on certain keywords, including plaintiff's trademarks, to cause their links to appear as "Sponsored Links" on Google when a search for "FRAGRANCENET" or "FRAGRANCENET.COM" is performed. (Compl. ¶¶ 18, 24, Ex. A.) As a result, defendants' links would appear on the top and right side of the search results screen when a search for plaintiff's trademarks was performed. (Compl. ¶¶ 18, 24, Ex. A.)

Plaintiff alleges that it demanded that defendants discontinue all further use of plaintiff's marks and asked that defendants bid on plaintiff's marks as a "negative match" to prevent defendants' links from appearing as results when plaintiff's marks are searched on Google. (Compl. ¶ 25.) According to plaintiff, defendants refused to do either and have continued to use plaintiff's trademarks without permission. Plaintiff further alleges that defendants have generated substantial revenue and benefits from this use. (Compl. ¶¶ 4, 26.) Plaintiff claims that this practice has caused confusion among consumers and that plaintiff has suffered irreparable harm as a result of defendants' use of its trademarks. (Compl. ¶¶ 4, 31.)

B. Procedural History

On June 19, 2009, plaintiff filed the instant complaint against defendants. By letter dated September 3, 2009, defendants indicated their intention to move for dismissal of the complaint for failure to state a cause of action upon which relief can be predicated. On September 30, 2009, defendants filed their motion to dismiss. Plaintiff filed opposition papers on October 30, 2009, and defendants filed their reply on November 6, 2009. Oral argument was heard on December 2, 2009. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

### III. DISCUSSION

Plaintiff alleges that defendants knowingly and willfully infringed plaintiff's trademarks by bidding on, purchasing, and using keywords, including plaintiff's trademarks, in Google's AdWords program. Plaintiff also alleges that defendants know that their actions will cause defendants' links to appear as search results when consumers search for "FRAGRANCENET" or "FRAGRANCENET.COM." Plaintiff further alleges that this has caused confusion or mistake as to the origin, sponsorship, or approval of defendants' services.[1] Plaintiff has also included as an exhibit to its complaint screenshots that depict defendants' links appearing as Sponsored Links when plaintiff's trademarks are searched on Google. (Compl. Ex. A.)

Defendants argue that plaintiff's trademarks are not protectable, as a matter of law, because plaintiff's marks are generic. Defendants further argue that plaintiff's marks lack distinction, and that even if they had secondary meaning, they would still be generic.[2] Essentially, the core of defendants' argument is that plaintiff cannot sue for the protection of its trademarks because its marks are generic and, therefore, not protectable. Defendants do not argue that plaintiff's pleadings are insufficient on their face; rather, defendants argue that plaintiff does not have a protectable trademark. As discussed below, the Court holds that it is inappropriate to determine whether plaintiff's marks are generic at the motion to dismiss stage in this particular case because, viewing the facts alleged in a light most favorable to plaintiff, plaintiff has adequately stated plausible trademark claims in its complaint.

A generic word cannot be validly

---

[1] In *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009), the Second Circuit held, clarifying the decision in *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005), that the alleged use of a competitor's name as a keyword in connection with the advertising program of an internet search engine constituted a "use" under the Lanham Act. *See Rescuecom Corp.*, 562 F.3d at 130 ("We did not imply in *1-800* that an alleged infringer's use of a trademark in an internal software program insulates the alleged infringer from a charge of infringement, no matter how likely the use is to cause confusion in the marketplace. If we were to adopt Google and its amici's argument, the operators of search engines would be free to use trademarks in ways designed to deceive and cause consumer confusion. This is surely neither within the intention nor the letter of the Lanham Act.") (footnote omitted).

[2] Although defendants' brief made a passing reference that seemed to implicitly suggest that, even if plaintiff's marks were descriptive, they could not survive a motion to dismiss (*see* Defs.' Mem. of Law at 8), counsel for defendants confirmed at oral argument that defendants are arguing that the claims should be dismissed on the grounds that the marks are generic.

4

registered as a trademark. *CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975); *see also 815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 647 (2d Cir. 1988) ("Generic terms are not entitled to any common-law trademark protection, nor may they be registered under the Lanham Act."). The classification of a mark is based on how the purchasing public for the particular good perceives the mark. *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 215 (2d Cir. 2003). Accordingly, the classification of a trademark as generic, descriptive, suggestive, or arbitrary, which is a requisite determination for a trademark infringement claim, is a factual determination. *Id.*; *accord Textile Deliveries v. Stagno*, No. 90 Civ. 2020, 1990 U.S. Dist. LEXIS 13309, at *14 (S.D.N.Y. Oct. 9, 1990), *aff'd*, 52 F.3d 46 (2d Cir. 1995). To find that a trademark is generic, a court must determine the significance of the mark in the minds of the public: "[A] mark is not generic merely because it has some significance to the public as an indication of the nature or class of an article. In order to become generic the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 580 (2d Cir. 1963) (quoting *Feathercombs, Inc. v. Solo Products Corp.*, 306 F.2d 251, 256 (2d Cir. 1963)).

When a trademark has been registered, it is presumed not to be generic. *Reese Pub. Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980) ("If a mark has been registered with the United States Patent and Trademark Office, the defendants in an infringement action do bear the burden of overcoming the presumption that the mark is not generic."). Thus, the party challenging the validity of a registered trademark must present evidence sufficient to overcome the presumption that the trademark is valid. In making this determination regarding a mark's understanding in the consuming public, the Second Circuit has articulated a non-exhaustive list of competent sources that can be considered, "including consumer surveys, testimony of consumers or trade professionals, dictionary definitions, uncontested usage of the mark by competitors to describe their products, generic usage in newspaper and magazine articles, and generic usage by the proponent of the trademark." *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 360 (E.D.N.Y. 2007) (citations omitted).

In the instant case, the Court concludes that the question of whether FragranceNet's registered trademarks are generic is a fact-specific inquiry that is inappropriate for determination on a motion to dismiss. In order to analyze that issue in the instant case, the Court would have to determine whether, in the minds of the public, the primary significance of the terms "FRAGRANCENET" and "FRAGRANCENET.COM" is a website that sells various types of perfumes and related products. "Given the statutory presumption of validity accorded to registered marks," the determination of the primary significance of plaintiff's marks in the minds of the public requires additional evidence that is not currently before the Court, which could include "consumer surveys, dictionary definitions, newspapers and other publications, generic use by competitors, testimony of lexicographers, generic use of the term by [the] mark's owner, and use of the term by third parties in trademark registrations." *Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432, 440 (S.D.N.Y. 1989). Defendant has not submitted any evidence on

this issue, and the determination of this specific issue is inappropriate for a motion to dismiss. *See, e.g.*, *Courtenay Commc'ns Corp.*, 334 F.3d at 215 ("It is usually true that the classification of a mark is a factual question, and that the question turns on how the purchasing public views the mark. The pleadings and documents necessarily relied upon by plaintiff's complaint, which were all that the district court could rightfully consider in deciding the motion to dismiss for failure to state a claim, are insufficient for determining the critical fact of how the public views [a] mark."); *Fine Foods Int'l, L.P. v. N. Am. Fine Foods, Inc.*, No. 99-CV-1062, 1999 WL 1288681, at *10 (E.D.N.Y. Nov. 12, 1999) ("[D]efendants' arguments regarding the strength of the mark fail . . . because whether a trademark is generic or descriptive is a question of fact not properly determined by examining the pleadings alone."); *see also North Forest Dev., LLC v. Walden Ave. Realty Assocs., LLC*, No. 06-CV-378A, 2007 WL 2295808, at *4 (W.D.N.Y. Aug. 9, 2007). In short, it is simply too early in the case for the Court to determine whether plaintiff's trademarks are generic. As the Second Circuit has noted, the proper inquiry on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (citation and internal quotation omitted). Here, plaintiff has asserted plausible claims that survive a motion to dismiss based upon the allegations in the complaint.

Furthermore, the Court declines to convert this motion to dismiss into a motion for summary judgment. As a threshold matter, defendant has not submitted any evidence to the rebut the presumption that the registered marks are not generic. Thus, there is nothing for the Court to consider, in terms of evidence from the defendants, if it were to convert the motion to dismiss into a summary judgment motion. In any event, even if defendants had submitted evidence on this issue or wish to submit evidence on this issue, conversion at this juncture is unwarranted. Both parties should be afforded an opportunity to conduct appropriate discovery before making any factual submissions on a motion for summary judgment. *See, e.g.*, *Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*, No. 04 Civ. 3136 (HB), 2005 WL 13682, at *9 (S.D.N.Y. Jan. 3, 2005) ("The burden is on [plaintiff] to prove that [its] mark is not generic. As [plaintiff] has not had the opportunity to submit proof showing the mark is descriptive, the Court only needs to determine if they have alleged that 'green light' is a descriptive term. [Plaintiff] meets this criteria, as it has alleged that it holds a valid U.S. trademark for the name "green light." The Court declines to convert this motion to dismiss into a motion for summary judgment and thus will not consider the documents [defendant] has appended to its motion papers purportedly to document the generic nature of the term 'green light.'" (internal citations omitted)). Thus, to the extent that defendants ask the Court to convert the motion to dismiss to summary judgment, the Court declines in its discretion to do so.

Although defendants cite to several cases to support their position that the Court should decide this issue at the motion to dismiss stage, this Court finds those cases inapposite to the circumstances here. First, defendants cite *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11 (2d Cir. 1975), for the proposition that a court may dismiss a complaint for trademark infringement when the plaintiff's trademark is generic. However, the Court notes that there are several

differences between that case and the instant case. First, the opinion in *CES Publishing* discusses the particular issue of whether the title of a periodical is a valid trademark. *Id.* at 13-16. As discussed in more detail below, the Second Circuit has issued several opinions pertaining to this particular trademark issue, involving publication titles. However, even in those publication title cases, the Second Circuit has made clear that "it is usually true that the classification of a mark is a factual question." *Courtenay Commc'ns Corp.*, 334 F.3d at 215 (citation and internal quotations omitted) (reversing district court and holding that whether the composite "iMarketing News" mark was generic presented a factual issue that could not be resolved on a motion to dismiss). Furthermore, in *CES Publishing*, the Second Circuit had an evidentiary record before it because the case involved a motion to dismiss that was filed in conjunction with a motion for a preliminary injunction; in the instant case, this Court lacks an evidentiary record regarding the public's perception of plaintiff's trademarks. Specifically, in *CES Publishing*, in support of its motion to dismiss, the defendant submitted an affidavit attesting that a number of other companies used the same words in their publication titles as the plaintiff used in its trademark. *Id.* at 12-13. The affidavit also alleged that the generic nature of the title was illustrated in advertisements, personnel listings, news articles, and other articles written about the industry. *Id.* at 13. Here, defendants have not submitted factual support for their contention that the marks "FRAGRANCENET" and "FRAGRANCENET.COM" are generic. They have provided no facts about the online perfume sales industry. Instead, defendants rely primarily on citations to cases involving different types of products to support their proposition that plaintiff's mark is not protectable. Accordingly, unlike in *CES Publishing*, there is absolutely no evidentiary record in the instant case from which the Court could find that defendants have rebutted the presumption afforded to registered trademarks and demonstrated, as a matter of law, that the marks are generic.

For similar reasons, defendants' reliance on *Reese Publishing v. Hampton International Communications*, 620 F.2d 7 (2d Cir. 1980) is misplaced. In *Reese*, which also involved the validity of a trademark on a periodical title, "[t]he district court consolidated the trial on the merits with the hearing on appellant's motion for a preliminary injunction . . . ." *Id.* at 12. Accordingly, an evidentiary record was established before the court ruled on whether the plaintiff's trademark was generic. *Id.* at 11 ("In any event, there was sufficient evidence in the record to support the district court's conclusion that Reese's mark was generic.") Furthermore, unlike FragranceNet's marks, the mark used by the plaintiff in *Reese* was not registered. *Id.* ("[W]here, as here, the mark is not registered, this presumption of validity does not come into play. Instead, the burden is on plaintiff to prove that its mark is a valid trademark . . . ." (citations omitted)).

In their reply, defendants also rely on *Energy Intelligence Group, Inc. v. UBS Financial Services, Inc.*, No. 08 Civ. 1497 (DAB), 2009 U.S. Dist. LEXIS 48495 (S.D.N.Y. May 22, 2009). However, that non-binding case is similarly distinguishable from the instant case. In *Energy Intelligence Group*, the district court granted a motion to dismiss based on its finding that the plaintiff's trademark for a publication – namely, "THE OIL DAILY" – although registered, was generic. *Id.* at *14-15. However, like *CES Publishing Corp.* and *Reese Publishing*, that case involved a determination of whether a

periodical title was generic or not. *Id.* at \*11-15. The court in *Energy Intelligence Group* explicitly based its holding on the narrow line of Second Circuit cases that have held that a periodical title that simply refers to the name of the industry and how often the periodical is distributed is generic as a matter of law. *Id.* at \*11-15 (discussing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976); *Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7 (2d Cir. 1980); *CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11 (2d Cir. 1975)). As a threshold matter, this Court is dealing not with a periodical, but with a service. More importantly, even extending the rationale of *CES Publishing* and *Energy Intelligence Group* in connection with periodicals to products, the registered marks at issue here consist of two terms "fragrance" and "net" that are independent of the ".com" that would be used for the internet site. The Court declines to conclude that it is implausible, as a matter of law, that these terms used in combination could, at a minimum, be "descriptive" under the trademark laws. *See, e.g., McSpadden v. Caron*, No. 03-CV-6285 CJS, 2004 WL 2108394, at \*13 (W.D.N.Y. Sept. 20, 2004) (holding that "usamedicine.com" in connection with "a website selling prescription drugs, or medicine, primarily to persons in the United States of America, also known as the U.S.A." to be descriptive). Thus, under these circumstances, the Court does not consider the registered marks at issue here to be analogous to "THE OIL DAILY," such that it can be determined to be generic as a matter of law at the motion to dismiss stage.

This Court's conclusion is consistent with the decisions of numerous other courts in analogous circumstances that have held that the determination of whether a product's mark is generic could not be decided at the motion to dismiss stage. *See, e.g., Courtenay Commc'ns Corp.*, 334 F.3d at 215; *Conn. Cmty. Bank v. Bank of Greenwich*, No. 06-cv-1293 (JBA), 2007 WL 1306547, at \*2 (D. Conn. May 3, 2007); *North Forest Dev., LLC*, 2007 WL 2295808, at \*4; *Greenlight Capital, Inc.*, 2005 WL 13682, at \*9; *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 458 (E.D.N.Y. 2004); *Fine Foods Int'l, L.P.*, 1999 WL 1288681, at \*10. In fact, at oral argument, both sides stated that, based upon their research (which is consistent with the Court's independent research), they were aware of no case ever in this Circuit where a court has, at the motion to dismiss stage, lacking an evidentiary record, dismissed a trademark claim on the grounds that a registered product or service name (as opposed to a publication title) was generic as a matter of law. None of the cases cited by defendants in their brief involved dismissal of the trademark claims for a product on grounds that its mark was generic at the motion to dismiss stage.[3] The reason for this lack of case authority to support the defendants' position is clear – the determination of whether a product's mark is generic involves

---

[3] For example, defendants rely heavily on *Interstate Net Bank v. NetB@nk, Inc.*, 221 F. Supp. 2d 513 (D.N.J. 2002), which held that the trademark "NETBANK" was generic, to support their contention that plaintiff's combination of the terms "fragrance" and "net" is similarly generic. However, that case, which is not controlling on this Court, involved a motion for summary judgment that occurred after discovery and that was decided based on extensive evidence before the court at that time. *Id.* at 516, 521-22, 524. Moreover, as discussed *infra*, the Court must examine plaintiff's mark in its entirety, rather than breaking it down into its component parts. *Toys 'R' Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F. Supp. 1189, 1196 (S.D.N.Y. 1983).

8

a determination of "how the purchasing public *for the particular good* perceives the mark." *Hearts on Fire Co., LLC. v. L C Int'l Corp.*, No. 04 Civ. 2536 (LTS)(MHD), 2004 WL 1724932, at *3 (S.D.N.Y. July 30, 2004) (citing *Courtenay Commc'ns Corp.*, 334 F.3d at 215) (emphasis added); *see also King-Seeley Thermos Co.*, 321 F.2d at 580 (holding that to determine whether trademark is generic, a court must determine the "principal significance of the word . . . [in] *its indication of the nature or class of an article*, rather than an indication of its origin." (emphasis added)). Thus, except perhaps in some extraordinary circumstances not present here, that type of determination cannot be made on a motion to dismiss without an evidentiary record. *See, e.g.*, *Courtenay Commc'ns Corp.*, 334 F.3d at 214 ("CCC's complaint alleged, *inter alia*, that CCC established 'iMarketing News' as a trademark for its product; that defendants' use of CCC's mark injures the reputation that Plaintiff and iMarketing News have established; and that 'iMarketing News' was associated with Plaintiff's publication. Although imprecise, these allegations, viewed in a light most favorable to plaintiff, are sufficient to allege that the mark is distinctive, either inherently (*e.g.*, if it was found to be suggestive in the minds of the public) or otherwise (*i.e.*, if it was found to be descriptive and to have acquired secondary meaning), rather than generic (*i.e.*, if it were found to refer to a genus of products rather than a particular producer's product), and therefore protectable under trademark law.") (internal quotations and citations omitted).

Defendants also attempt to prove that the marks "FRAGRANCENET" and "FRAGRANCENET.COM" are generic by breaking each mark down into its component parts and alleging that each of those parts individually are generic: "fragrance," "net," and ".com." However, a "mark must be evaluated by examining the mark in its entirety, rather than breaking down its component parts." *Toys 'R' Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1196 (S.D.N.Y. 1983) (citations omitted). Thus, as noted above, the component parts of the registered marks at issue in this case must be analyzed in their entirety and, given the marks at issue, such a determination cannot be made at the motion to dismiss stage.

Finally, defendants argue that the plaintiff's marks lack distinction and that the genericness of plaintiff's marks cannot be cured with claims of secondary meaning. Although defendants correctly note that the existence of secondary meaning cannot transform a generic term into a protectable trademark, *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976), these arguments presume that plaintiff's marks are otherwise generic. Accordingly, since the Court has already concluded that such a determination cannot be made at this stage in this case, the Court declines to address these other arguments at this time. *See Courtenay Commc'ns Corp.*, 334 F.3d at 217; *see also Andy Warhol Enters., Inc. v. Time, Inc.*, 700 F. Supp 760, 768 (S.D.N.Y. 1988) (citation omitted) ("[D]istinctive trademarks are those which are unique and which are not generic or descriptive.").

In sum, plaintiff's complaint alleges that plaintiff owns registered trademarks in "FRAGRANCENET" and 'FRAGRANCENET.COM." (Compl. ¶ 14.) Plaintiff also alleges that it has used those marks in connection with its online sale of perfume and related products since January

9

1997, and has received substantial recognition and goodwill among consumers. (Compl. ¶¶ 13-16.) Plaintiff claims that defendants have used those marks in connection with Google's AdWords program without plaintiff's permission, and that defendants' use has damaged plaintiff's business and caused confusion and mistakes among consumers. (Compl. ¶¶ 18, 24-26, 31.) The Court concludes that plaintiff's complaint has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. Accordingly, defendants' motion to dismiss is denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. Defendants are directed to file an answer within twenty days of this Memorandum and Order, and the parties are directed to proceed with discovery in accordance with the direction of Magistrate Judge Boyle.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 8, 2009
Central Islip, New York

\* \* \*

The attorney for plaintiff is Robert L. Sherman of Paul, Hastings, Janofsky, & Walker, LLP, 75 East 55th Street, New York, NY 10022. The attorney for defendants is Noah Shube, 434 Broadway, Sixth Floor, New York, NY 10013.